UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOE HAND PROMOTIONS, INC., as | ) | |
| Broadcast Licensee of the October 14, 2006 | ) | |
| UFC 64 Event | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | Civil Action No:  SA-07-CA-419-XR |
| | ) | |
| STEVE A. GARCIA, Individually and as | ) | |
| officer, director, shareholder, and/or principal | ) | |
| of UPRISING LLC, and UPRISING LLC | ) | |
| | ) | |
| Defendants. | ) | |

**DEFAULT JUDGMENT**

Plaintiff filed a Motion for Default Judgment (Docket No. 12) against Defendant Uprising

LLC d/b/a Shadows. Defendant Uprising's registered agent for service acknowledged receipt of

Plaintiff's Complaint and filed a Waiver of Service, signed September 29, 2007. To date, however,

Defendant has failed to file an answer, or in any way respond, to Plaintiff's complaint.

According to the affidavit of Plaintiff's President, Plaintiff purchased the rights to exhibit

the Ultimate Fighting Championship (UFC) #64 fight, which was held on October 14, 2006. Plaintiff

thereafter marketed the sub-licensing of the broadcast for a fee.

To uncover illegal piracy of this broadcast, Plaintiff hired an auditing corporation to visit

commercial establishments in San Antonio. Plaintiff provided the auditors with a list of approved

vendors for the fight, enabling the auditors to focus their attention on commercial establishments that

had not purchased distribution rights.

Exhibit C provides the names of all Texas commercial vendors that possessed lawful

broadcast rights to the fight.[1] Not included on this list is Defendant Uprising LLC. Despite not having legal right to publish the fight, Defendant did so anyways, as documented by one of the auditors hired by Plaintiff, who visited Defendant's business on the night of the fight and saw it being displayed on Defendant's television screens.[2]

In an effort to protect its business interests from such illegal broadcasting, Plaintiff filed this action seeking damages against Uprising for pirating the restricted satellite signal used to transmit the fight. By failing to file an answer, Defendant Uprising has effectively admitted to such piracy. Furthermore, because of the unlikelihood of Defendant accidentally acquiring and displaying the scrambled pay-per-view signal, Defendant's failure to file an answer amounts to an admission that its activity constituted a willful violation of statutory law. As one court observed, "signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems."[3] Additionally, as another court expressed, "based on the limited methods of intercepting closed circuit broadcasting of pay-per-view events and the low probability that a commercial establishment could intercept such a broadcast merely by chance . . . courts have held conduct such as that of [Defendant] in this case to be willful and for the purposes of direct or indirect commercial advantage or private financial gain."[4]

The exhibits and affidavits provided by Plaintiff support its Motion for Default Judgment.

---

[1] Docket 12.

[2] Docket 12, Exhibit D.

[3] Time Warner Cable of New York City v. Googies Luncheonette, Inc., 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999).

[4] Entertainment by J&J, Inc. v. Al-Waha Enterprises, Inc., 219 F. Supp. 2d 769, 776 (S.D. Tex 2002).

Therefore, the Motion is granted. The question now becomes the amount of damages to which Plaintiff is entitled.

### Damages

On this issue, we turn to 47 U.S.C. § 605. That provision governs the unauthorized use of communications by wire or radio. As Plaintiff notes, courts are split as to whether 47 U.S.C. § 553 or § 605 applies to the unauthorized interception and broadcast of cable communications. The Fifth Circuit has recognized and discussed this split of authority, but has yet to address the issue.[5] Because this is a motion for default judgment, and because Defendant has failed to provide arguments to the contrary, the Court will proceed with its damages analysis under § 605, following the line of authority consistent with a leading Second Circuit case.[6]

There are three relevant damages provisions in 47 U.S.C. § 605. They are 605(e)(3)(C)(i)(II), 605(e)(3)(C)(ii), and 605(e)(3)(B)(iii).

The first - 605(e)(3)(C)(i)(II) - states, "the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this action involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just." As Plaintiff notes in its brief, courts have developed two approaches for determining statutory damages under this provision. The first is to award damages based on the number of patrons in the establishment at the time of the violation, and the second is to award a flat sum for damages.

On the night in question, there were approximately 65 - 80 people at Shadows.[7] The cost to

---

[5] *See* Prostar v. Massachi, 239 F. 3d 669, 673-4 (5th Cir. 2001).

[6] *See* International Cablevision, Inc. v. Sykes, 75 F.3d 123 (2nd Cir. 1996).

[7] Docket No. 12, Exhibit D.

purchase viewing rights of the fight for that number of people would have been $875.[8] The court finds it reasonable to treble what would have been the cost had Defendant followed the law. Thus, when $875 is multiplied by three, the total statutory damages becomes $2,625. This figure accounts for the money saved by not complying with the law, as well as any profits made from food and drink sales associated with customers who stayed and watched the fight.

Next, the Court turns to 605(e)(3)(C)(ii), which states, "in any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section."

Because of the extreme unlikelihood that Defendant could inadvertently have acquired the signal to display the fight, coupled with its failure to file an answer denying Plaintiff's allegations on this issue, the Court finds that Defendant Uprising LLC's violation of 605(a) was "committed willfully and for purposes of direct or indirect commercial advantage."[9]

Through the affidavit of Plaintiff's President, Plaintiff has effectively described the substantial impact illegal piracy has had on its business. Thus, the Court finds it appropriate to send a strong signal that such unauthorized activity will not be profitable. At the same time, the Court is under the assumption that Defendant is not a major chain, and while this violation deserves to be punished, it should not be done in a manner than imposes an insurmountable financial burden.

---

[8]Docket No. 12, Exhibit B.

[9] 47 U.S.C. § 605(e)(3)(C)(ii).

4

Therefore, the Court finds appropriate a fine of $10,000 under this section.

Finally, 605(e)(3)(B)(iii) provides that courts "shall direct the recovery of full costs, including reasonable attorneys' fees, to an aggrieved party who prevails."

Plaintiff's counsel, through affidavit, has submitted a detailed list of the nature and amount of Plaintiff's costs and fees, which total $1,425.00. Because the Court finds these costs and fees to be reasonable, the request for them is granted.

### Conclusion

Plaintiff's request for Default Judgment (Docket No. 12) is GRANTED. Damages are awarded to Plaintiff as follows under the following provisions of 47 U.S.C. 605:

605(e)(3)(C)(i)(II) - $2,625.00

605(e)(3)(C)(ii) - $10,000.00

605(e)(3)(B)(iii) - $1,425.00

In total, the Court grants Judgment for Plaintiff in the amount of $14,050.

It is so ORDERED.

SIGNED this 16th day of January, 2008.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE